**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CR-20120-GAYLES**

**UNITED STATES OF AMERICA**

**vs.**

**DANIEL JAY MOTHA,**

**Defendant.**
_______________________________/

**FACTUAL PROFFER**

The Defendant, Daniel Jay Motha (hereinafter referred to as the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

1. The Defendant was a resident of Miami-Dade County, Florida, in the Southern District of Florida.

2. Location Ventures, LLC ("LV") was a real estate development company headquartered and operating in Miami-Dade County, Florida. LV had numerous subsidiaries and affiliated companies (together, the "LV Entities"), one of which was Location Development LLC ("Location Development"). The LV Entities paid their payroll through Location Development. Location Development's Employer Identification Number (EIN) ended in 2639.

3. From approximately 2017 through August 2022, the Defendant was the Chief Financial Officer (CFO) of LV and served, functionally, as the CFO for the LV Entities. The Defendant was replaced as CFO in or around August 2022, but maintained knowledge and responsibility over a number of financial decisions, including those concerning payroll taxes and

distribution of company funds.

4. From 2017 through at least July 2023, Co-Conspirator 1 served as the Chief Executive Officer (CEO) of LV and also served as the manager of the LV Entities.

5. From in or around 2017 through September 2023, the LV Entities, through Location Development, failed to pay over $1.3 million in payroll tax funds.

**Payroll Taxes**

6. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering federal tax laws of, and collecting taxes owed to, the United States.

7. The Federal Insurance Contribution Act ("FICA") required employers to withhold Medicare and Social Security taxes from their employees' wages. The Internal Revenue Code also required employers to withhold federal income taxes from their employees' wages. Employers, who held these taxes in trust for the United States, were required to pay them over to the IRS on behalf of their employees. Collectively, these withheld taxes are referred to as "trust fund taxes." An individual with the obligation to collect, account for, and pay over withheld trust fund taxes to the government is called a "responsible person."

8. For employers whose annual liability for trust fund taxes was greater than $1,000, responsible persons were required to report the employment taxes due for the employer on a Form 941, Employer's Quarterly Federal Tax Return ("Form 941") on a quarterly basis. The Form 941 was due at the end of the month following the end of each calendar quarter and reported the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of employment taxes due, and the total tax deposits the employer made with the IRS.

**MOTHA and his Co-Conspirators' Failure to Pay Trust Fund Taxes for the LV Entities**

9. The Defendant and Co-conspirator 1 were responsible persons, that is, they had the responsibility to collect, truthfully account for on Forms 941, and pay over to the IRS on behalf of the LV Entities, trust fund taxes collected from their employees.

10. From the quarter ending on or about September 30, 2017, through the quarter ending on or about December 31, 2022, the LV Entities withheld from the pay of their employees, and were obligated to remit to the IRS, over $1.3 million in trust fund taxes and employer FICA contributions, as set forth below.

| **Location Development (EIN ending in 2639)** | |
|---|---|
| **Quarter Ending** | **Unpaid Trust Fund Taxes and Employer FICA Contributions** |
| September 30, 2017 | $8,654.16 |
| December 31, 2017 | $4,555.62 |
| March 31, 2018 | $4,299.92 |
| June 30, 2018 | $5,527.10 |
| September 30, 2018 | $22,162.91 |
| December 31, 2018 | $32,896.90 |
| March 31, 2019 | $38,836.64 |
| June 30, 2019 | $50,224.26 |
| September 30, 2019 | $64,825.30 |
| December 31, 2019 | $62,498.47 |
| March 31, 2020 | $69,169.59 |
| June 30, 2020 | $52,546.67 |
| September 30, 2020 | $46,533.30 |
| December 31, 2020 | $44,724.74 |
| March 31, 2021 | $68,690.82 |
| June 30, 2021 | $90,421.01 |

| **Location Development (EIN ending in 2639)** | |
|---|---|
| **Quarter Ending** | **Unpaid Trust Fund Taxes and Employer FICA Contributions** |
| September 30, 2021 | $117,664.25 |
| December 31, 2021 | $144,743.73 |
| March 31, 2022 | $184,265.12 |
| June 30, 2022 | $192,194.47 |
| September 30, 2022 | $70,645.00 |
| December 31, 2022 | $518.34 |
| **Total** | **$1,376,598.32** |

11. From in or around August 2017 through in or around September 2023, the Defendant and his co-conspirators did not file with the IRS Forms 941 for the LV Entities, nor did they remit any of the withheld trust fund taxes to the IRS.

12. Additionally, for tax years 2017 through 2020, the Defendant and his co-conspirators withheld, but did not account for on Forms 941 or W-2, or remit to the IRS, the trust fund taxes of over 10 employees. The Defendant and his co-conspirators therefore embezzled funds from these employee victims.

13. The Defendant and his co-conspirators, including Co-Conspirator 1, knew of the LV Entities' trust fund tax obligations, knew that the LV Entities were not in compliance with those obligations, and willfully failed to truthfully account for and pay over to the IRS the withheld trust fund taxes.

a. First, the Defendant received emails from the LV Entities' Controller and the LV Entities' Chief Operating Officer advising the Defendant of the outstanding trust fund tax obligations and notifying him that Forms 941 were due to be filed with the IRS for the LV Entities.

b. Second, the LV Entities used QuickBooks accounting software. The Defendant received emails directly from QuickBooks advising him "payroll taxes are now due."

c. Third, the Defendant sent to Co-Conspirator 1 emails advising Co-Conspirator 1 of the LV Entities' outstanding trust fund tax obligations.

d. Fourth, the LV Entities' trust fund tax liabilities accrued on the Location Development balance sheet in QuickBooks. The Defendant and Co-Conspirator 1 knew the trust fund tax liabilities accrued in Quickbooks. Defendant, with Co-Conspirator 1's knowledge, periodically created false entries in Quickbooks to make it appear as if the LV Entities had satisfied their trust fund tax liabilities, when in fact the Defendant and Co-Conspirator 1 knew that the LV Entities had not satisfied such liabilities. One such fraudulent modification occurred on or about June 9, 2020.

e. Fifth, the Defendant and Co-Conspirator 1 represented to investors on income statements and balance sheets that the LV Entities had satisfied their trust fund tax liabilities, when in fact the Defendant and Co-Conspirator 1 knew that the LV Entities had not satisfied such liabilities.

f. Sixth, several LV Entities' employees had conversations with the Defendant and Co-Conspirator 1 advising them that the LV Entities needed to remit trust fund taxes to the IRS. Co-Conspirator 1 responded that they would resolve the trust fund tax matter when the IRS required them do so.

g. Seventh, the Defendant and Co-Conspirator 1 discussed the LV Entities' outstanding trust fund tax liabilities and decided not to fulfill this obligation. One

such conversation occurred on or about April 14, 2021.

14. Instead of paying over to the IRS the trust fund taxes that had been withheld from the LV Entities' employee wages, the Defendant and his co-conspirators caused the LV Entities to spend corporate funds to pay discretionary expenses. Those discretionary expenses included the following:

a. On or about August 11, 2022, the Defendant received $76,357 as a return of capital and preferred profit distribution from the sale of the 800 Dixie project.

b. On or about October 13, 2022, the Defendant received $107,481.82 as a profit distribution from the sale of the 800 Dixie project.

c. Several LV Entities' contractors and employees, including the Defendant and Co-Conspirator 1, received bonuses.

d. Commissions were paid to sales agents at a luxury real estate brokerage.

15. By July 2023, investors in the LV Entities suspected that Co-Conspirator 1 was mismanaging and misappropriating funds from the LV Entities. In July 2023, the LV Entities hired Individual 1, a former judge with prior receivership experience, to manage the LV Entities. In September 2023, Individual 1 filed with the IRS Forms 941 for the quarters ending September 30, 2017 through December 31, 2022, and remitted to the IRS the $1,376,598.32 in unpaid trust fund taxes and employer FICA contributions.

16. To date, the LV Entities have not paid more than $800,000 in late fees, penalties, and interest relating to the unpaid and unremitted trust fund taxes for the quarters ending September 30, 2017 through December 31, 2022.

[THIS SPACE INTENTIONALLY LEFT BLANK]

17. Based upon the foregoing facts, which establish all the elements of the charges to which the Defendant is pleading guilty, the Government would prove the Defendant's guilt at trial.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 6/25/26 By: ______________________
ELIZABETH YOUNG
ASSISTANT UNITED STATES ATTORNEY
DEPUTY CHIEF

Date: 6/25/26 By: ______________________
DAYA NATHAN
ASSISTANT UNITED STATES ATTORNEY

Date: 06/25/2026 By: ______________________
ERIC ROSEN
COUNSEL FOR DANIEL JAY MOTHA

Date: 6/25/26 By: ______________________
DANIEL JAY MOTHA
DEFENDANT